UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

JULIE MOBLEY                                                          PLAINTIFF

V.                                   NO. 3:19CV00198-JTR

ANDREW SAUL,
Commissioner of Social Security Administration[1]          DEFENDANT

ORDER

## I.   Introduction:

Plaintiff, Julie Mobley ("Mobley"), applied for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") on August 30, 2017, alleging disability beginning on October 1, 2008. (Tr. at 15). After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application. (Tr. at 25). The Appeals Council denied her request for review, making the ALJ's denial of her application for benefits the final decision of the Commissioner. (Tr. at 1).

For the reasons stated below, the Court [2] affirms the decision of the Commissioner.

## II.   The Commissioner's Decision:

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

[2] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

The ALJ found that Mobley had not engaged in substantial gainful activity since the alleged onset date of October 1, 2008. (Tr. at 17). At Step Two, the ALJ found that Mobley had the following severe impairments: osteoarthritis of the hands, fingers, and knee, status post operation, carpal tunnel syndrome, right shoulder impingement with rotator cuff repair, and meniscus tear of the left knee. *Id*.

After finding that Mobley's impairments did not meet or equal a listed impairment (Tr. at 18), the ALJ determined that Mobley had the residual functional capacity ("RFC") to perform work at the light exertional level, except that: (1) she could only occasionally stoop, kneel, crouch, crawl; (2) she could only occasionally reach overhead with the right upper extremity; and (3) she could frequently but not constantly finger and feel with the right upper extremity. (Tr. at 19).

The ALJ found, based on her RFC, that Mobley was unable to perform any past relevant work. (Tr. at 23). Relying upon the testimony of a Vocational Expert ("VE"), the ALJ found, based on Mobley's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform, including work as packing line worker and courier. (Tr. at 24). Thus, the ALJ found that Mobley was not disabled. *Id*.

## III. <u>Discussion</u>:

### A. Standard of Review

2

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d. at 477.

B.   Mobley's Arguments on Appeal

Mobley contends that substantial evidence does not support the ALJ's decision to deny benefits. She argues that: (1) the RFC did not incorporate all of her limitations; (2) the ALJ failed to fully develop the record; and (3) the ALJ failed to

3

meet his burden at Step Five.

Mobley's allegations of disability focus on her knee, her shoulder, and her hands, wrists and fingers. While she claims her limitations from these severe impairments precluded all work, the record shows that with surgery, Mobley improved considerably. And although Mobley alleged disability beginning in 2008, her medical treatment did not begin in earnest until 2017. (Tr. at 363).

Dr. Brian Dickson, M.D., one of Mobley's treating orthopedists, saw her a few times in 2017 and 2018 for ongoing left knee problems. (Tr. at 373-375, 491-493, 557-558). He noted pain and swelling, and x-rays and an MRI showed complex meniscus tear, chrondomalacia, and a large Baker's cyst. *Id*. Dr. Dickson performed a left knee arthroscopy and partial lateral meniscectomy in March 2018. (Tr. at 557-558). Mobley did not show up for a scheduled post-operative follow-up appointment, and there were no subsequent records related to the left knee. (Tr. at 556). The failure to seek regular and continuing treatment contradicts allegations of disability. *See Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997).

Mobley had ongoing right shoulder pain, stemming from a rotator cuff tear. A right shoulder MRI showed significant problems, but a right shoulder arthroscopy and rotator cuff repair performed by orthopedist Dr. Bryan Byrd, M.D., proved very successful. (Tr. at 485-495). At follow-up visits, Mobley said she was doing

"wonderful" and had no pain or problems with the shoulder. *Id*. She was happy with her progress and results. *Id*. She had full range of motion and good overall strength in all planes. *Id*. Dr. Byrd recommended, based on her significant improvement, that Mobley resume activities and work on strengthening exercises. *Id*. A physician's recommendation to exercise suggests that a claimant has an increased functional capacity. *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009).

Similarly, while Mobley had problems with carpal tunnel syndrome and thumb pain, she had surgery to address those problems in 2007 (left hand) and 2017 (right hand). (Tr. at 528-540). Dr. Jeannine Andersson, M.D., found that Mobley did well after surgery and Mobley started physical therapy. (Tr. at 431-481, 536-548). In February 2018, Mobley told Dr. Andersson that she was doing well with respect to her hands and fingers. (Tr. at 528). She had no significant swelling or inflammation. *Id.* Sensation was intact in all fingers, and Mobley had normal grip strength. *Id*. Mobley had no complaints other than soreness. *Id*.

Mobley's improvement post-surgeries was born out by her activities of daily living. She could shop, drive, read, do some chores (albeit slowly), work in the yard, and prepare simple meals. (Tr. at 52-54, 256-260). Such daily activities undermine her claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995) Mobley was able to care for her mother, who had Alzheimer's disease and was incontinent

(although she said her sister helped her out with this). *Id.*

Two Disability Determination Services medical experts reviewed the records and found, in 2017, that Mobley would be limited to no overhead reaching. (Tr. at 82-83, 109-111). The ALJ considered these opinions, along with the treating doctors' clinic notes illustrating considerable improvement post-surgeries, and decided that Mobley was able to perform at least some reaching. (Tr. at 19-23).[3]  The RFC properly incorporated Mobley's credible limitations. *See McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011).

Moreover, the ALJ was not required to further develop the record because of the consistency of Mobley's own reports of improvement and the objective medical record. Further record development is required only if there is not sufficient medical evidence in the record to determine whether a claimant is disabled. *Martise v. Astrue*, 641 F.3d 909, 926–27 (8th Cir. 2011).

While Mobley argues that the ALJ did not resolve a conflict at Step Five, the Court disagrees. Before relying on VE evidence to support a determination that a

---

[3] Mobley points out that the ALJ misconstrued the reviewing medical experts' opinions as saying "limited overhead reaching," rather than "no overhead reaching," but this is harmless error, because the balance of the medical record supports the ALJ's consideration of opinion evidence and the assigned RFC. (Tr. at 23). *See Price v Colvin*, 2015 U.S. Dist. LEXIS 82578 *27 (W.D. Ark. June 25, 2015)("scrivener's error" by ALJ was harmless because the medical record as a whole supported his determination).

claimant is not disabled, the ALJ has an affirmative responsibility to ask about "any possible conflict" between the VE's testimony and the *Dictionary of Occupational Titles* ("DOT"), and to obtain an explanation for any such conflict. *Renfrow v. Colvin*, 496 F.3d 918, 920-21 (8th Cir. 2007); *See* Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704 (Dec. 4, 2000). The ALJ in this case included all of the credible limitations in the hypothetical that he posed to the VE. He then asked about any possible conflict between the DOT and the VE's testimony, and the VE clarified and resolved a possible conflict about reaching requirements, based on his knowledge and experience. (Tr. at 24-25, 65-67); *see Yeley v. Berryhill*, 2018 U.S. Dist. LEXIS 154465 *25-27 (E.D. Mo. Sept. 11, 2018) (ALJ properly relied upon VE's response that "in his experience" claimant would be able to perform jobs identified). The ALJ met his burden at Step Five.

## IV.   <u>Conclusion</u>:

There is substantial evidence to support the Commissioner's decision to deny benefits. The RFC incorporated all of Mobley's credible limitations, the record was fully and fairly developed, and the ALJ did not err at Step Five.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is AFFIRMED, and Mobley's Complaint is DISMISSED, with prejudice.

DATED this 29th day of July, 2020.

_____
UNITED STATES MAGISTRATE JUDGE